**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| W.O.G. Community Development Corporation; WOG LLC; Word of God Church & Ministries Int'l; and Bishop Eric Davis, | ) ) ) ) ) | Civil Action No.:  3:25-cv-12768-SAL |
| Plaintiffs, | ) ) | **COMPLAINT** (Jury Trial Demanded) |
| vs. | ) ) | |
| Richland County Council, as the governing body of Richland County; Allison Terracio, as Councilmember for Richland County District 5; Jason Branham, as Councilmember for Richland County District 1; Derrek Pugh, as Councilmember for Richland County District 2; Yvonne McBride, as Councilmember for Richland County District 3; Paul Livingston, as Councilmember for Richland County District 4; Don Weaver, as Councilmember for Richland County District 6; Gretchen D. Barron, as Councilmember for Richland County District 7; Overture E. Walker, as Councilmember for Richland County District 8; Jesica Mackey, as Council Chair and Councilmember for Richland County District 9; Cheryl D. English, as Councilmember for Richland County District 10; Chakisse Newton, as Councilmember for Richland County District 11; Leonardo Brown, as County Administrator for Richland County; Anette Kirylo, as Clerk of Council for Richland County; and Patrick Wright, as County Attorney and Chief Legal Officer for Richland County, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiffs, W.O.G. Community Development Corporation, WOG LLC, Word of God

Church & Ministries Int'l, and Bishop Eric Davis (collectively "Plaintiffs"), complaining of the Defendants, Richland County Council as the governing body of Richland County, Allison Terracio as Councilmember for Richland County District 5, Jason Branham as Councilmember for Richland County District 1, Derrek Pugh as Councilmember for Richland County District 2, Yvonne McBride as former Councilmember for Richland County District 3, Paul Livingston as Councilmember for Richland County District 4, Don Weaver as Councilmember for Richland County District 6, Gretchen D. Barron as Councilmember for Richland County District 7, Overture E. Walker as former Councilmember for Richland County District 8, Jesica Mackey as Council Chair and Councilmember for Richland County District 9, Cheryl D. English as Councilmember for Richland County District 10, Chakisse Newton as Councilmember for Richland County District 11, Leonardo Brown as County Administrator for Richland County, Anette Kirylo as Clerk of Council for Richland County, and Patrick Wright as County Attorney for Richland County (collectively referred to as "Defendants"), allege as follows:

## PARTIES

1.    WOG Community Development Corporation ("WOGCDC") is a charitable/non-profit organization organized and existing under the laws of the State of South Carolina, and having its principal place of operations in Columbia, South Carolina. Word of God Church & Ministries Int'l was the incorporator of WOGCDC.

2.    WOG LLC is a limited liability company organized and existing under the laws of the State of South Carolina, and having its principal place of operations in Columbia, South Carolina. WOG LLC is a single-member LLC in which Word of God Church & Ministries Int'l is the sole member.

3.      Word of God Church & Ministries Int'l ("WOG Church"), is also a charitable/non-profit organization organized and existing under the laws of the State of South Carolina, and having its principal place of business in Columbia, South Carolina.

4.      Bishop Eric Davis ("Bishop Davis") is the Presiding Prelate and founder of WOG Church duly authorized to act on its behalf, is and was at all times relevant duly authorized to act on behalf of WOGCDC and WOG LLC with respect to the matters made subject of this Complaint, and is and was at all times relevant a resident of Columbia, South Carolina.

5.      Richland County Council (the "Council") is the governing body of Richland County and is a proper party defendant in this action due to the fact that the deprivation of the Plaintiffs' federal constitutional rights herein described was a direct result of the Council's policy or custom of refusing to hear any economic development proposals in work sessions and/or formal Council meetings coming from a particular District within the County unless the Councilmember from that District proposes the matter for consideration by the Council as a whole.

6.      Allison Terracio, as Councilmember for Richland County District 5 ("Councilmember Terracio"), is and was at all times relevant to this action an individual of the full age of majority acting in her capacity as Richland County Councilmember, and is and was at all times relevant a resident and citizen of the State of South Carolina. Councilmember Terracio is being sued herein in both her personal and official capacities.

7.      Jason Branham, as Councilmember for Richland County District 1 ("Councilmember Branham"), is and was at all times relevant to this action an individual of the full age of majority acting in his capacity as Richland County Councilmember, and is and was at all times relevant a resident and citizen of the State of South Carolina. Councilmember Branham is being sued herein in both his personal and official capacities.

8.     Derrek Pugh, as Councilmember for Richland County District 2 ("Councilmember Pugh"), is and was at all times relevant to this action an individual of the full age of majority acting in his capacity as Richland County Councilmember, and is and was at all times relevant a resident and citizen of the State of South Carolina. Councilmember Pugh is being sued herein in both his personal and official capacities.

9.     Yvonne McBride, as former Councilmember for Richland County District 3 ("Former Councilmember McBride"), was at the time of the deprivation of Plaintiffs' Constitutional Rights and at all times relevant to this action an individual of the full age of majority acting in her capacity as Richland County Councilmember, and is and was at all times relevant a resident and citizen of the State of South Carolina. Former Councilmember McBride is being sued herein in both her personal and official capacities.

10.    Paul Livingston, as Councilmember for Richland County District 4 ("Councilmember Livingston"), is and was at all times relevant to this action an individual of the full age of majority acting in his capacity as Richland County Councilmember, and is and was at all times relevant a resident and citizen of the State of South Carolina. Councilmember Livingston is being sued herein in both his personal and official capacities.

11.    Don Weaver, as Councilmember for Richland County District 6 ("Councilmember Weaver"), is and was at all times relevant to this action an individual of the full age of majority acting in his capacity as Richland County Councilmember, and is and was at all times relevant a resident and citizen of the State of South Carolina. Councilmember Weaver is being sued herein in both his personal and official capacities.

12.    Gretchen D. Barron, as Councilmember for Richland County District 7 ("Councilmember Barron"), is and was at all times relevant to this action an individual of the full

age of majority acting in her capacity as Richland County Councilmember, and is and was at all times relevant a resident and citizen of the State of South Carolina. Councilmember Barron is being sued herein in both her personal and official capacities.

13.    Overture E. Walker, as former Councilmember for Richland County District 8 ("Former Councilmember Walker"), was at the time of the deprivation of Plaintiffs' Constitutional Rights and at all times relevant to this action an individual of the full age of majority acting in his capacity as Richland County Councilmember, and is and was at all times relevant a resident and citizen of the State of South Carolina. Former Councilmember Walker is being sued herein in both his personal and official capacities.

14.    Jesica Mackey, as Council Chair and Councilmember for Richland County District 9 ("Chairperson Mackey"), is and was at all times relevant to this action an individual of the full age of majority acting in her capacity as Richland County Council Chair and Councilmember, and is and was at all times relevant a resident and citizen of the State of South Carolina. Councilmember Mackey is being sued herein in both her personal and official capacities.

15.    Cheryl D. English, as Councilmember for Richland County District 10 ("Councilmember English"), is and was at all times relevant to this action an individual of the full age of majority acting in her capacity as Richland County Councilmember, and is and was at all times relevant a resident and citizen of the State of South Carolina. Councilmember English is being sued herein in both her personal and official capacities.

16.    Chakisse Newton, as Councilmember for Richland County District 11 ("Councilmember Newton"), is and was at all times relevant to this action an individual of the full age of majority acting in her capacity as Richland County Councilmember, and is and was at all

times relevant a resident and citizen of the State of South Carolina. Councilmember Newton is being sued herein in both her personal and official capacities.

17.    Leonardo Brown, as County Administrator for Richland County ("County Administrator Brown"), is and was at all times relevant to this action an individual of the full age of majority acting in his capacity as Richland County Administrator, and is and was at all times relevant a resident and citizen of the State of South Carolina. County Administrator Brown is being sued herein in both his personal and official capacities.

18.    Anette Kirylo, as Clerk of Council for Richland County ("County Clerk Kirylo"), is and was at all times relevant to this action an individual of the full age of majority acting in her capacity as Clerk of Council for Richland County, and is and was at all times relevant a resident and citizen of the State of South Carolina. County Clerk Kirylo is being sued herein in both her personal and official capacities.

19.    Patrick Wright, as County Attorney and Chief Legal Officer for Richland County ("County Attorney Wright"), is and was at all times relevant to this action an individual of the full age of majority acting in his capacity as Richland County Attorney and Chief Legal Officer, and is and was at all times relevant a resident and citizen of the State of South Carolina. County Attorney Wright is being sued herein in both his personal and official capacities.

## JURISDICTION AND VENUE

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all, or a substantial part, of the acts and/or omissions forming the basis of the claims occurred in the District of South Carolina, Columbia Division.

21.     This action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and questions of state law under the South Carolina Constitution Article I, § 2.

22.     This Court has original jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331 and 1343 and has supplemental jurisdiction over the claims under the South Carolina State Constitution pursuant to 28 U.S.C. § 1367.

23.     This Court has personal jurisdiction over all Defendants named in this matter as all Defendants are residents and domiciliaries of the State of South Carolina.

24.     This Court has authority to award damages for violation(s) of Plaintiffs' Civil Rights under the relevant State and Federal Constitutional Authority referenced above pursuant to 42 U.S.C. § 1983 & 1985(3), *et seq*.

25.     This Court further has authority to grant the requested injunctive relief under 28 U.S.C. § 1343(3); declaratory relief under 28 U.S.C. § 2201(a) and costs, attorneys' fees and expert fees/costs under 42 U.S.C. § 1988(b) & (c).

## **INTRODUCTION**

26.     Plaintiffs bring this action pursuant to 42 U.S.C § 1983 & 1985, as well as South Carolina Constitution Article I, § 2, for violation of their civil rights. WOG Church, among its many activities for the betterment of Richland County (including its "G.A.N.G.S. in Peace" initiative, which was lauded by local law enforcement as a major part of curbing violent crime in Richland County), also owns various campuses and enterprises, created for the specific purpose of community and economic development. WOGCDC and WOG LLC, separately or in concert, finance projects to re-develop and revitalize as much of the County of Richland as they are able. Through WOGCDC and WOGLLC, and for purposes of investment in, and re-development and

revitalization of, the "Dutch Square Mall" in Richland County (an area of importance to the Richland County Council in terms of community re-development, per the County Council's and the Central Midlands Council of Government's 2010 Broad River Corridor and Community Master Plan, Commercial Development Guidelines and the newly-formed "P3" Public-Private Partnership initiative), Plaintiffs sought both partnership/funding from Richland County (among other state and local government authorities, including the City of Columbia and the South Carolina Jobs-Economic Development Authority ("JEDA")) as well as a property tax abatement under the County's "Commercial Development Guidelines," now known as the "P3 Program" (which is meant to incentivize private investment in areas of Richland County, including specifically the area surrounding the Dutch Square Mall, in ways that will attract non-county residents to Richland County).[1] Plaintiffs sought public hearing at work session and/or a regular County Council meeting of its proposal to purchase and re-develop the Dutch Square Mall and, as part of that, their request for partnership/funding from the County as well as tax abatement under the County's Commercial Development Guidelines, a necessity in order for the project to move forward.[2] A true and correct copy of the County's "Commercial Development Guidelines" is

---

[1] Notably, the City of Columbia quickly approved roughly $2 million in hospitality tax funding (over 4 years) for Plaintiffs' development proposal regarding the Dutch Square Mall, which only underscores the Richland County Council's unconstitutional actions pled herein. In short, the City of Columbia, like Richland County, is subject to First Amendment law regarding "separation of church and state" and prohibition of government "entanglement" with religious institutions. Likewise, the City of Columbia, like Richland County, is precluded by the First Amendment and U.S. Constitution from abridging the rights of and/or failing to preserve the equal protection of the laws for religious and non-religious citizens alike. But unlike the Richland County Council, the City of Columbia recognized the rights of Plaintiffs (as well as the constitutional restrictions on its authority) when it agreed to provide funding to Plaintiffs' Dutch Square Mall project proposal notwithstanding that Plaintiffs are a church, its Bishop and affiliated entities created for the purpose of community and economic (and importantly, *secular*) development.

[2] Also underscoring the Richland County Council's improper actions described herein, JEDA approved the issuance of up to an $18 million bond for the project due to its expected economic

attached hereto as Exhibit A.

27. When Defendants' unconstitutional refusal to hear Plaintiffs' proposal for the Dutch Square Mall project prevented it from moving forward, Plaintiffs were forced to build a smaller-scale version of the project: Plaintiffs' "I.C.A.N. Innovation Center" constructed in the former Service Merchandise Plaza (just 20,000 sq. ft. rather than the 200,000 sq. ft. project that was planned for the Dutch Square Mall). The ribbon cutting ceremony for this project *just* took place. Notably, the Mayor of the City of Columbia, among others, lauded this project as one of the most innovative the area has ever known.[3] Both the I.C.A.N. project and the Plaintiffs' proposal for the Dutch Square Mall (that Plaintiffs were never allowed to formally bring before the Council) fit neatly within the requirements of the County's hospitality tax funding program (which essentially are just that the project be one that will attract non-County residents to visit Richland County), were comparable to other projects for which the Richland County Council had provided funding and/or property tax abatement,[4] and were completely *non-religious* in nature.

28. Plaintiffs' proposal was exactly the type of investment to which the Richland

---

and job development impact. The Executive Director of JEDA stated that this was "the most creative project" JEDA had ever funded. Indeed, it seems all relevant state and local government bodies *besides the Richland County Council* saw the value in this project and did not raise unconstitutional objections to funding it based on Plaintiffs' religious affiliation.

[3] Mayor Daniel Rickenmann, Mayor of the City of Columbia, attended the ribbon cutting and remarked about how innovative and beneficial the project was for the area in terms of community, economic and job development (including insofar as it would attract outside visitors and investment and how it fit right into the area's community investment goals ("this is our gap filler; this puts us at a whole nother level")). He also very notably referenced that Plaintiffs regrettably were unable to build the larger version of this project at the Dutch Square Mall due to the "roadblock" the Richland County Council had placed in the way.

[4] A perfect example of this is the then-recently completed "Richland Fashion Mall" project developed by a *secular* private entity in partnership with the County and as a result of property tax abatement granted to the developer by the County.

County Council had awarded such financial consideration in the past (meaning the proposal was for a project designed to and that would have fit neatly within the County's hospitality tax funding and property tax abatement programs and publicly stated goals for re-development of important, yet blighted, parts of Richland County, like the Dutch Square Mall and the Richland Fashion Mall before it). But Plaintiffs were denied participation in the hospitality tax funding and property tax abatement programs and related funding opportunities the Council had offered to others in the past (including the *secular* entity that re-developed the Richland Fashion Mall). Indeed, Plaintiffs were denied even the opportunity to present the proposal to the Council during public Council meeting, an opportunity any other non-religious citizen would be granted, *for the sole and explicit reason that Plaintiffs are a church, its Bishop and entities affiliated with said church*. As detailed below, the message to Plaintiffs by Defendants was simple and explicit: "churches need not apply."

29.     Prohibiting Plaintiffs from participating in – nay, from even seeking participation in – tax abatement and funding programs for which any other, non-religious citizen would be eligible violated and continues to violate Plaintiffs' rights to equal protection, free exercise of religion and free speech under the First and Fourteenth Amendments to the United States Constitution, the First Amendment's Establishment Clause and South Carolina Constitution Article I, § 2. *See, e.g., Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 137 S.Ct. 2012, 198 L.Ed. 2d 551 (2017).

30.     Plaintiffs herein seek damages, including compensatory, consequential and punitive damages, as well as attorney's fees and costs, for Defendants' knowing and/or reckless violation of Plaintiffs' clearly established Constitutional Rights that proximately caused Plaintiffs to lose the lucrative opportunity to re-develop the Dutch Square Mall and caused significant damage to Plaintiffs' business and business reputation.

31.    Plaintiffs herein also wish to participate in the future, *without discrimination*, in Richland County programs or opportunities that align with Plaintiffs' community and economic development goals for the betterment of Richland County. As such, Plaintiffs also seek declaratory and injunctive relief to redress irreparable harm to Plaintiffs' civil rights.

## FACTUAL BACKGROUND

32.    Throughout its existence, WOG Church, and in particular its founder and life-long member of the Richland County community, Bishop Davis, have pursued some secular objectives with the purpose of developing and bettering the community in Richland County. They have done so alongside the Church's religious and spiritual mission. This is because stopping violent crime, helping families and people in need, creating a safe and prosperous community, economic and community development and like objectives are areas where the Church's spiritual mission is served by non-religious community action. WOG Church and Bishop Davis have partnered with business, corporate, community and governmental actors in the past to achieve such purposes on which religious and non-religious actors are aligned.

33.    One such prior joint action in which WOG Church/Bishop Davis and local governing authorities in Richland County (including local law enforcement) have partnered, with great success, was WOG Church and Bishop Davis' "G.A.N.G.S. in Peace" initiative. Through this initiative, WOG Church and Bishop Davis engaged rival gang members to come together to stop violent crime in Richland County. The programs developed when Plaintiffs and local government actors have come together to solve problems, like increases in violent crime in the County, have resulted in real change to the benefit of all who live in or come to Richland County. Indeed, spearheaded by Bishop Davis, the G.A.N.G.S. in Peace initiative successfully brought law enforcement and rival gangs together in such a way that all were invested in the betterment of

Richland County and that resulted in greatly curbing the incidence of violent crime in Richland County. Both Chief W.H. "Skip" Holbrook of the Columbia Police Department and Sheriff Leon Lott of the Richland County Sheriff's Department publicly expressed their wholehearted support for the initiative in letters to the Richland County Council.[5]

34.     These letters were sent in support of Plaintiffs' request that the Council agree to *reimburse* Plaintiffs the roughly $200,000 Plaintiffs planned to invest in the initiative (Plaintiffs did not wait for funding to materialize since the problem of shootings and increase in violent crime in the area were emergent and required immediate action). In the ensuing Regular Session on July 12, 2022, however, the Council rejected the request with Councilmember Terracio raising concerns/questions about "separation of church and state." County Attorney Wright, publicly and on the record, stated to Councilmember Terracio and the rest of the Council that this would not be an appropriate reason for rejecting the request due to the unconstitutional nature of Councilmember Terracio's concern. The meeting minutes, a true and correct copy of which are attached hereto as Exhibit D, reflect County Attorney Wright's statement on this in no uncertain terms (see at p. 9):

---

[5] Chief Holbrook's and Sheriff Lott's official letters of support are enclosed herewith as Exhibits B and C, respectively.

G.A.N.G.S. in Peace Initiative – Ms. Barron stated G.A.N.G.S. in Peace requested funding to support some activities in Richland County to curb gun and gang violence. When the committee received the proposal, they requested additional information from the organization, which can be found in the agenda packet.

Ms. Terracio stated her main concern is public funding mixing with religious organizations.

Mr. Wright responded the Supreme Court has said that a religious organization cannot use any part of direct grant to fund religious worship, education, etc. Organizations may use government monies to support non-religious social services.

Ms. Terracio inquired if any part of this program involves religious instruction.

Bishop Eric Davis responded the program does not involve religious instruction. They are facilitating an emergency situation.

Mr. Wright stated, in addition, there have been a number of Supreme Court decisions that say religious organizations stand just as any other organization. We cannot not provide them funding because they are a religious organization.

35.     Neither back in July of 2022 nor more recently (as the rest of this Complaint sets forth) does it appear Councilmember Terracio and the Council as a whole ever heeded this advice and ceased efforts to violate Plaintiffs' civil rights.

36.     In pursuit of other (non-religious) community and economic development initiatives, WOG Church and Bishop Davis created WOGCDC and WOG LLC, among other entities. These entities, among other things, seek to invest in the community by buying and re-developing areas within the community that are sorely in need of investment. They develop projects that attract further investment and tourism, create jobs and provide places for residents of Richland County and non-residents alike to commune and enjoy the area. In short, Plaintiffs have taken a decided interest in bettering Richland County for all, religious and non-religious alike.

37.     As the Richland County Council did previously, Plaintiffs recognized the Dutch Square Mall as a property in need of re-development and as a property whose redevelopment fell squarely within the Council's goal of re-vitalizing the Broad River Corridor in a way that would

attract investment and interest from visitors outside of the local community.[6] Plaintiffs also realized the potential that re-development of this property had in terms of bettering the Richland County Community and bringing new life to the area.

38.    As such, starting back in or around August 2023, Plaintiffs began gathering investors and putting together a proposal to purchase the Dutch Square Mall for purposes of re-development. The plan that was developed included a film and live arts theater and convention center, a technological innovation center, a film and animation production studio, school of animation, hotels, restaurants and retail. In addition, WOGCDC currently operates the ReCreation Arena, Columbia's only 46,000 square ft. NCAA certified privately-owned sports and events venue. This facility currently facilitates approximately 30,000 participants for AAU Spring tournament basketball, with 46% of the participants being tourists. The Arena also hosts large non-sports-related events that bring tourism to the Greater Columbia area. With the inclusion of the entire Mall project and hotels, it is estimated that the combined initiative would draw over 500,000 visitors from outside of the County annually. These are facts the Council would have learned, and Plaintiffs were eager to share, but sadly the Council decided – for unconstitutional reasons – to reject Plaintiffs' request to present the project to the Council.

---

[6] It would not have been lost on the Council that the "Carolina Crossroads" project, which invested $2 billion in the roads, exits, and highways directly surrounding and feeding into the mall, would very much enhance the potentially very lucrative nature of the investment opportunity at the Dutch Square Mall. The roads and infrastructure built as part of the Carolina Crossroads project would direct tourism directly to the Mall's entrance. So the Council knew or should have known the types of incentives it customarily grants for such projects were a very valuable commodity in this instance, and the Council's refusal to allow Plaintiffs to seek this consideration, where any non-religious actor would have been given such opportunity, was both clearly unconstitutional and very damaging to Plaintiffs from an economic loss standpoint.

39.     WOG Church[7] (acting on behalf of itself, the Plaintiffs and its investing partners), entered a contract to purchase the Dutch Square Mall in August 2023. The original purchase price was $14,000,000.[8] The property's then-current tax assessed value, however, was only $4,896,400, per the County Assessor's office. So as one might expect, the tax bill after purchase would be substantially increased (and increased even further once re-developed at a projected value of over $100 million), indeed increased in such a way that it would make the project non-economical to accomplish, *without* the types of hospitality tax funding and property tax abatements regularly and readily granted by the Council to other (*non-religiously-affiliated*) developers undertaking similar projects in the area (like the Richland Fashion Mall project, recently completed).

40.     Fortunately, projects like this one (that Plaintiffs intended to propose to the Council) were precisely the reason the Council's commercial development guidelines, hospitality tax funding, property tax abatement and/or economic development funding initiatives for re-development of the Broad River Corridor were created. So Plaintiffs and their investors were confident they could obtain the necessary consideration from the County to pursue the project. Indeed, during the process of soliciting funding and tax abatement (actually the very same day, July 2, 2024, that the Council as a whole in private executive session rejected Plaintiffs' request

---

[7] WOG Church was the original "Purchaser" on the contract to purchase the Dutch Square Mall property. The contract to purchase was amended a number of times. Along the way, the purchase was subdivided into multiple parcels, for which WOG Church would be the purchasing entity for one, and WOGCDC the purchasing entity for the others. And ultimately, by the last iteration of the contract (dated January 13, 2025), WOG LLC was substituted as the purchasing entity for the parcel that WOG Church was still the "purchaser." Both WOGCDC and WOG LLC were assigned certain rights in the contracts by WOG Church and were WOG Church's successors to the contract.

[8] Around the time it became clear the Council would not entertain any opportunity for Plaintiffs to seek tax incentives and/or funding for the project, the contract to purchase was amended and the price reduced to $12,990,000. Plaintiffs continued in their attempts to purchase the property and thus proceed with the project anyway through May 2025, but ultimately proceeding with the project proved unworkable without funding and/or tax incentives from the County.

to present their Dutch Square Mall project), the Council initiated its P3 public/private partnership program during public work session of the same meeting. The P3 Program was just the latest iteration in the Council's longstanding commercial and economic development initiatives within the County.[9] The P3 Program was first presented at this July 2, 2024 Council meeting and was subsequently approved by the Council on or before November 15, 2024.[10]

41.    Importantly, the project Plaintiffs sought to propose included no places of worship nor any areas from which any non-religious members of the Richland County community would be excluded nor any places for religious activity.

42.    Also importantly, and contrary to the mischaracterization by County Attorney Wright (detailed further below), upon purchase, the property *would* have been taxable. All of the existing retail, restaurants and newly developed hotels and commercial properties would have remained taxable entities. Emails and discussions between Bishop Davis and Jeff Ruble, Director of the Richland County Economic Development Office, as well as Leonardo Brown, County Administrator, reflect that it was always the expectation, as represented by Plaintiffs to said County

---

[9] The July 2, 2024 Work Session during which the Council approved the P3 Program is available on YouTube at: https://www.youtube.com/live/OL59yFUGUuE (last visited Sept. 23, 2025) (notably, at roughly 19:50 minutes into the presentation, the P3 Program proponents presented it to the Council under the proposed theme, "R.I.S.E." which stands for "Richland Invests in the Success *of Everyone*"; also very notably, Councilmember Terracio complimented the choice of the theme "R.I.S.E." in response at roughly 21:48 minutes into the video) (emphasis added).

[10] *See* WLTX News19's November 15, 2024 article regarding the newly approved P3 Program, available at: https://www.wltx.com/article/news/local/richland-county-public-private-partnership-economic-development/101-15a9187f-a903-42a0-b782-ea620a41949b (last visited Sept. 23, 2025) (Chairperson Mackey was quoted in the article, "[t]his vote for P3 is our continued commitment to Richland county residents to focus on economic development and making sure jobs are here"; the article went on to note that "**[o]ne specific target [of the P3 initiative] is the tech industry that the county wants to further invest in**[,]" which is particularly notable since **Plaintiffs' Dutch Square Mall project was specifically focused on technology and innovation** in terms of economic development and job growth) (emphasis added).

officials, that the property would remain taxable. *See, e.g.*, email correspondence attached hereto as Exhibits E, F and G. Mr. Ruble even sent the Commercial Development Guidelines and related Commercial Incentives Application to Plaintiffs to begin the process. A preliminary tax assessment was done by Mr. Ruble and a subsequent meeting was held with County Administrator Brown and Mr. Ruble to establish a projected tax bill for the proposed property with the understanding that the taxes would increase with the development of new properties. The date of the meeting was December 11, 2023. A follow-up meeting was held with WOGCDC Director Robert Reese and the City of Columbia economic development team on January 17, 2024. Mr. Ruble was in attendance at that meeting as well.

43.     Plaintiffs put together a proposal to the Richland County Council detailing the project, how it would benefit the Richland County community, and how it fit squarely within the County's hospitality tax funding and property tax abatement programs. Also, upon recommendation of Former Councilmember McBride, Plaintiffs solicited the support of the Columbia City Council as well in pursuit of a potential joint initiative between Richland County and the City of Columbia. Former Councilmember McBride expressed that the other Councilmembers were "BSing" and were not going to vote in favor of the project. She then suggested Plaintiffs should (1) call for a direct meeting with Chairperson Mackey, (2) enlist every Councilmember who said privately that they would support a group motion to bring it before the Council, and (3) enlist the City of Columbia to do a joint initiative with Richland County.

44.     Unlike the Richland County Council, the Columbia City Council immediately approved a work session, after which Plaintiffs' hospitality tax funding request was unanimously approved in executive sessions. The City of Columbia agreed to and stood ready to provide $2 million in funding for the project over 4 years.

45.     Like the Richland Fashion Mall project proposal (for which the purchase of the property was completed just eight months earlier at that time (August 2023), Plaintiff's proposed project entailed over $100 million in development costs over an extended period of time. However, in sharp contrast to their treatment of Plaintiffs' proposal discussed herein, the Richland County Councilmembers allowed the Richland Fashion Mall project to be presented for approval during work sessions and Council meeting and subsequently granted $23 million in tax abatements for the project. The purchaser's comment described in the Daily Gamecock article regarding the project and its approval by the City and County speaks volumes: "Southeastern, a commercial real estate agency based out of Augusta, Georgia, purchased the property in January 2023 for $18.6 million. **The deal would not have been successful without the tax incentives offered by both the city and county**, said Jason Long, the senior vice president of Southeastern."[11] Unsurprisingly, Plaintiffs' inability to obtain the same treatment and consideration from the Council that Southeastern (a non-religiously-affiliated entity) was given is the reason Plaintiffs' Dutch Square Mall project was unsuccessful.

46.     After entering the contract to purchase the Dutch Square Mall property in August 2023, Plaintiffs began seeking to bring the proposal before the Richland County Council. Plaintiffs were told by other Councilmembers, including Councilmember Pugh and Former Councilmember McBride, that the Council's custom and practice was such that proposals for projects within a certain councilmember's district are only brought before the Council as a whole *if the member from that district brings it forward*. Since this project was in District 5, Plaintiffs were told they

---

[11] Emma Davisson, *Richland Mall redevelopment aims to reinvigorate Columbia area*, The Daily Gamecock (March 21, 2024), available at: https://www.dailygamecock.com/article/2024/03/richland-mall-redevelopment-aims-to-reinvigorate-columbia-area-news-davisson (last visited September 30, 2025) (emphasis added).

would have to reach out to Councilmember Terracio and obtain her support in order to bring the proposal and request before the entire Council. Through this custom and practice, the Council and its other individual Councilmembers imbue the particular local district member, in this case Councilmember Terracio, with complete authority to act on behalf of the Council in determining whether to bring the proposal before the entire Council for a vote or not.

47.     Following these instructions, Plaintiffs reached out to Councilmember Terracio for a meeting to request she bring the proposal before the Council for hospitality tax funding and/or economic development funding and property tax abatement consideration. As noted above, this was not Plaintiffs first encounter with Councilmember Terracio *nor* Councilmember Terracio's (and the majority of the Council's) first admonishment that they cannot treat organizations like Plaintiffs' differently than they would any other individual or entity under the guise of "the importance of separation of church and state." On July 12, 2022, during a previous Council meeting, Councilmember Terracio questioned Plaintiffs' ability to receive government funding for its G.A.N.G.S. in Peace initiative due to their church affiliation. *In the presence of the entire Council* (which included at the time all but two of the Councilmember Defendants named here), Councilmember Terracio was advised by County Attorney Wright of the unconstitutional nature of her query. *See* ¶ 34, *supra*, and Exhibit D hereto at p. 9. Through this interaction, the Council – and especially Councilmember Terracio – gained unequivocal knowledge that treating religious-affiliated organizations differently, when it comes to resources or benefits the County would provide, due to their status as such was illegal as a Constitutional matter.

48.     Councilmember Terracio first, and later all the remaining Councilmembers, the Council as a whole, County Administrator Brown, County Clerk Kirylo, and County Attorney Wright (when they, despite knowing her stated reason for doing so, tacitly and/or explicitly

approved Councilmember Terracio's rejection of the opportunity for Plaintiffs to bring their proposal before the Council) have consciously disregarded Plaintiffs' Constitutional rights.

49.    First, with Councilmember Pugh acting as the middleman, Plaintiffs were able to secure a zoom meeting with Councilmember Terracio, in which Councilmember Pugh also participated. This zoom call took place on November 30, 2023. Plaintiffs had been advised that Councilmember Terracio's views on "separation of church and state" were (once again) the roadblock to her consideration of a project put forward by Plaintiffs, but Plaintiffs sought this zoom meeting to present the proposal for the Dutch Square Mall project to Councilmember Terracio so she could see for herself that (1) the County would not be funding any religious activity, (2) the County would not be funding a project to build any places of worship or any other place for religious observances, and (3) the project and its progenitors were fully eligible for the County's hospitality tax funding and property tax abatement programs because of the secular, hospitality-related (and taxable) purposes to which the property would be put.

50.    Astoundingly in light of the fact that she had been told before by County Attorney Wright that such a position was unconstitutional, Councilmember Terracio minced zero words in giving the same unconstitutional reason for her denial of Plaintiffs' request to bring their Dutch Square Mall proposal before the Council *without ever even hearing the plans for the project*. In other words, in no uncertain terms, Councilmember Terracio rejected the request to bring the proposal before the Council *not* because the project proposed was ineligible for the type of consideration sought *nor* because it was simply not a good project, but because in her view, the *Plaintiffs* bringing the proposal were ineligible for the type of consideration sought purely because of their religious status and character. In this regard, the facts that underlie this suit are not meaningfully distinguishable from those that faced the U.S. Supreme Court in *Trinity Lutheran*

*Church*, cited in ¶ 29, *supra*.

51.    This zoom meeting was video recorded. Because Councilmember Terracio's words speak for themselves and, on their face, evidence the unconstitutionality of her actions (and the other Defendants' later tacit endorsement of her actions), Plaintiffs have reproduced this call herein *verbatim* and in its entirety as follows:

> [Bishop Eric Davis on the call]
> [Councilmember Allison Terracio on the call]
> [Councilmember Derrek Pugh on the call]
> [Robert Reese (WOGCDC Director) on the call]
>
> BISHOP DAVIS: So, Councilman Pugh, I just wanted clarification just for, um, context. So I asked Councilman - - Councilman Pugh to contact you. We had had some discussions about this project that we're doing in the District. Um, and so because of his familiarity, also Councilwoman McBride's familiarity, the suggestion was made that we, **for deference**, come to you because it's *in the District* - - um - - um - - **because for Council consideration, or motion, *um, it's your district, so we would need to, you know, solicit your support*.** And talking to Councilman Pugh in arranging that meeting, he told me, um, last night - - just, **this is what I want to know altogether - - that you would not be able to support it because of your belief in separation of church and state**. **Is that correct?**
>
> COUNCILMEMBER TERRACIO: That's - - **yeah, I think that's fair to say**.
>
> BISHOP DAVIS: Ok, so - - your - - your premise, you - - **do you understand this is a workforce development project, <u>economic project</u>, that we want to do in the District**?
>
> COUNCILMEMBER TERRACIO: I mean if you're looking for a workforce [clears throat], you know, there's - - what my understanding is that you guys were looking for 'H tax' and all 'H tax' projects are meant to be projects that increase - - that continue to crease [sic] visitation to, uh, the County from people out - - outside of the County. The way that this project was described is not that. If there is a commercial development or some sort of development [clears throat] that would, say - - let's just say, it's some kind of like education - - right, you say workforce development, then maybe that's education - - maybe that qualifies for something else, but it's not an 'H tax' project.
>
> BISHOP DAVIS: Uh, you haven't heard the project.
>
> COUNCILMEMBER TERRACIO: The - - I've only heard what was described to me.

BISHOP DAVIS: Um [laugh], well that was the purpose of our, uh, request, so that we could describe it to you. If you have a moment, I can pull the project up for you. Uh - -

MR. REESE: Eric, Eric, **I think it's important that she understands the Netflix connection, and pre - - and, and the entertainment component that's associated with it - -**

BISHOP DAVIS: That's why - - that's why - -

MR. REESE: And the - - and the fact that **this is not a project where there will be religious activities that are being held**.

BISHOP DAVIS: Um, that's what I was going - - **that's why we were calling for the meeting**, but if - -

COUNCILMEMBER TERRACIO: Ok, so let me just pause there and say, if this is not in any way religiously associated, **then why am I sort of being approached from the Church … aspect. Like, why is the Church approaching us, why are you as the Bishop approaching us, why are we not being approached by some other entity that is seeking funding**. So, say, like, a community - - community, uh, impact grant kind of entity. Why are we not being approached as a - - a entity that would be an economic development entity. Why are we being approached in this way?

BISHOP DAVIS: **Because the Church owns the CDC. It's the Community Development Corporation that this project is under is owned by the Church**. So - -

COUNCILMEMBER TERRACIO: **Ok, and you can see why that - - you can - - can you just imagine, if you're sitting in my spot, why that, to me, would seem problematic?**

BISHOP DAVIS: No I can't - -

COUNCILMEMBER TERRACIO: Maybe you can't.

BISHOP DAVIS: **I can't. I can't see why that would be problematic if I was sitting in your seat,** I can't say that I would. But you - - you have - - uh [laugh], every right to your opinion um, but, uh, we could show you the project, if necessary, or not, it's your choice, but, uh, **you've made your position real clear to us.** Um, uh, **we believe that the project under the terms and the - - the structure, *does* qualify for a hospitality, uh, appropriations. But if you don't feel that way, then there's no need for us to continue hammering that out**, but you know, but if you - - **if that's your position**. We're - - we're - - we're cool with your position.

COUNCILMEMBER TERRACIO: Ok

BISHOP DAVIS: I just wanted clarification, you know, because it was communicated to me by way of hearsay, so I just wanted to make sure I talked to you.

COUNCILMEMBER TERRACIO: Yeah, yeah, yeah. I think it's - - I think it's fine to - - to talk directly, um, again, you know, gossip and hearsay is [laugh], uh, rampant, and so I'm always happy to talk to people directly, uh particularly when they have, you know, a direct request. Um, I - - I just have not seen anything that - - again, I would be open to - - you know, if there are, again, economic development opportunities, um please approach our economic development folks and, uh, talk about what opportunities there might be policy-wise in terms of, um, assisting with that.

BISHOP DAVIS: **I just want you to be clear, um, the project that we *would have shown to you* is - - encompasses all aspects, economic, education, hospitality, it's all in there, but the entity is still owned by the Church, and because you feel that that is a problem with separation of church and state, then there's - - there's really no - - no reason**. Because your premise - -

COUNCILMEMBER TERRACIO: Yeah. Yeah - -

BISHOP DAVIS:  - - is that, under your premise, you can't support it. So then we accept your premise and have to find other ways to do the project, uh, outside - - **and just to be clear, it means that you, as our councilmember, we can't solicit or enlist your support, we've got to find other ways to do it, <u>because you hold that premise</u>?**

COUNCILMEMBER TERRACIO: **Yeah, yeah, yeah, I would say that's - - <u>that's true</u>**. Yeah - -

BISHOP DAVIS: Cool.

COUNCILMEMBER TERRACIO: - - and listen, if you - - if you - - if, uh, if there is a different project or a different means by doing the project that I can support, I'm happy to support it. Um, it's just that in this package, it does not make sense.

BISHOP DAVIS: Um, you have a package?

COUNCILMEMBER TERRACIO: No, but I'm saying from everything that you - - everything that's been presented to me both by you and anyone else, you know, I haven't seen anything that is, like, 'oh, yeah, this makes sense.' Right? I just haven't seen that.

BISHOP DAVIS: Ok. Um, Mr. Pugh, do you have anything?

COUNCILMEMBER PUGH: Nope, I don't have anything. My - - my - - my whole deal with this was to make sure that, uh, that I set up the meeting so that we could have, uh, a conversation about what the project looks like. **Um, I, me, personally, and this is my personal opinion, uh, <u>I think the project would be good</u> because we're - - we're  - - we're - - we're uh - - we're - - we're - - we're trying to activate a building that's dying, and the area is dying, and I'm just in the business of trying to get stuff done. <u>Uh, that doesn't take away from, you know, where - - where my colleague thinks</u>. I - - I just delivered the message and, uh, just - - and, like I said earlier, <u>before I said anything, I made sure I cleared with Ms. Terracio</u>, um, how I need to deliver the message and that's where <u>we</u> are. Um, I have - - I have nothing else to say. I mean, I still want to come by and look at the project myself, um, and walk through. Um, but other than that, <u>that's where I'm at</u>.**

BISHOP DAVIS: Mr. Reese, do you have anything else?

COUNCILMEMBER TERRACIO: [apparently mishearing "Mr. Reese, ..." for "Ms. Terracio, ..."] No, no, thank you for coming to me. And if - - and **if something changes and there's a different, you know - - a different - - uh, stru - - <u>structure</u>, I'd be happy to talk to you again.**

BISHOP DAVIS: Mr. Reese, did you have anything? Uh, we couldn't hear you, but I saw your head shaking. Ms. Terracio, thank you very much, as I said, we weren't going to take up much of your time, I don't think - - Mr. Reese, we're you saying something?

MR. REESE: No, no, no, I have nothing to contribute.

BISHOP DAVIS: Thank you very much. [Thumbs up].

COUNCILMEMBER TERRACIO: Alright, thanks guys, talk to you --

BISHOP DAVIS: Have a good day.

COUNCILMEMBER TERRACIO: Mhmm, ok bye.

52.    Following this interaction, Plaintiffs continued to try to get their day in Council by going around Councilmember Terracio with their request to present the proposal (later referred to by County Attorney Wright as Plaintiffs' "Partnership Proposal and Hospitality Funding & Sustainability Plan"). Such efforts were to no avail, despite the fact that Plaintiffs, in their missives

to the rest of the Council and County actors, indicated both that (1) Councilmember Terracio's reasoning was unconstitutional, and (2) the project in question, as the Council would see when presented, absolutely qualified for the funding and tax benefits sought.

53.     First, Plaintiffs sought guidance from the South Carolina Attorney General's office regarding whether Councilmember Terracio's reasoning was illegal. On January 10, 2024, Robert D. Cook, Solicitor General, provided the opinion letter attached hereto as Exhibit H. Citing, *inter alia*, *Trinity Lutheran Church*, 582 U.S. at 458, Solicitor General Cook confirmed Councilmember Terracio's reasoning, as described to him, constituted a violation of Plaintiffs' Constitutional rights. He block-quoted the *Trinity Lutheran Church* case as follows (pin cite: 582 U.S. at 458):

> [t]he Free Exercise Clause "protect[s] religious observers against unequal treatment," and subject to the strictest scrutiny laws that target the religious for "special disabilities" based on their "religious status." Church of Lukumi, Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533, 542, 113 S.Ct. 2217, 553, 542, 113 S.Ct. 2217, 124 L. Ed.2d 472 (1993). . . .  Applying this basic principle, this Court has repeatedly confirmed that denying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion that can be justified only by a state interest "of the highest order." McDaniel v. Paty, 435 U.S. 618, 628, 98 S.Ct. 1322, 55 L. Ed.2d 593 (1978) (plurality opinion) (quoting Wisconsin v. Yoder, 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L. Ed.2d 15 (1972).

54.     In no uncertain terms, as he closed his letter response, Solicitor General Cook wrote: "It appears from what you have presented to us that **the entire County Council, in deferring to Ms. Terracio,** refused to consider the application for funding simply because the applicant was a church or religious entity. **Under the authorities presented herein, the Free Exercise Clause of the United States Constitution precludes such discrimination on the basis of religion**." (emphasis added)

55.     Following this guidance, Plaintiffs implored the Council to recognize that denying Plaintiffs the opportunity to bring the proposal forward was improper (and, of course, to allow

hearing on the Proposal).

56.    On June 14, 2024, Plaintiffs sent the letter attached hereto as Exhibit I to the Chairperson Mackey and County Clerk Kirylo.[12] Per its terms: "This letter serves as a formal request for a comprehensive meeting with Richland County Council regarding the Dutch Square Mall – I.S.E.E. Silicon South Development. The redevelopment initiative is in accordance with the County's Broad River Corridor and Community Master Plan, adopted in 2010." This letter was sent upon the instruction of Former Councilmember McBride who indicated, after Plaintiffs made prior request to County Clerk Kirylo on June 12 for an opportunity to present the proposal to the Council, that Plaintiffs should contact Chairperson Mackey with the request. Also as noted in the letter, the same request was made to the Columbia City Council, who had approved and scheduled a meeting to hear the proposal for June 18, 2024 (as noted above, this meeting with the Columbia City Council not only took place but the Columbia City Council quickly approved funding, recognizing the project's potential impact and alignment with City goals for the area). But Chairperson Mackey ignored Plaintiffs' June 14, 2024 letter.

57.    Due to the lack of response, Plaintiffs sent another letter on June 28, 2024, this time to *each individual Councilmember, County Administrator Brown, County Clerk Kirylo, and County Attorney Wright*. *See* Exhibit I. This letter was sent to all County involved individuals because Plaintiffs' most forgiving assumption for Chairperson Mackey's lack of response was the Council's established custom and practice of requiring such requests to go through the local district member (here, Councilmember Terracio) in order to reach the entire Council. So Plaintiffs also

---

[12] Exhibit I consists of (1) the June 14, 2024 letter referenced above to Chairperson Mackey and County Clerk Kirylo, (2) the follow-up June 28, 2024 letter to all County involved actors referenced in ¶ 57, (3) Plaintiffs' "Partnership Proposal" presentation, (4) Plaintiffs' "Hospitality Funding & Sustainability Plan" presentation, and (5) the email to which all of the foregoing were attached, *in globo*.

took the time in this letter to inform the entire Council, County Administrator Brown, County Clerk Kirylo and County Attorney Wright of Councilmember Terracio's unconstitutional decision so that they would have an opportunity to recognize what Councilmember Terracio had done was wrong and allow this exception to the Council's usual custom and practice.

58.    To Plaintiffs' knowledge, while privately some of these individuals had expressed support to Bishop Davis, none stepped forward and broke rank, instead endorsing Councilmember Terracio's improper and illegal decision, thereby *knowingly* making that illegal decision the decision of the Council. As Plaintiffs' letter set forth (see Exhibit I hereto), "Mrs. Terracio illegally misinterpreted the constitutional religious exclusion clause stating '…separation of church and state…' as her rationale for not considering this major initiative." As the letter also reminded the Defendants, both Councilmember Terracio individually and all Councilmembers as a whole had been previously "advised by the County attorney of the constitutional illegality of her position" back in July 2022 when the Council was asked to fund the G.A.N.G.S. in Peace initiative. The letter also summarized Plaintiffs' efforts over the eight months preceding (Nov. 2023 to June 2024) to get the Council's fair consideration and further explained why this project should be one the Council would have a huge interest in and incentive to fund or give tax consideration to:

> In the attempt to achieve fair consideration, like the similar Richland Fashion Mall project, our team did, in fact, reach out directly to other Council members. Several meetings were held with Councilman Paul Livingston (District 4), and two conversations were had with Administrator Leonardo Brown. Additionally, telephone discussions with Councilman Derrek Pugh (Vice Chair, District 2), Gretchen D. Barron (District 7), Cheryl D. English (District 10) and Yvonne McBride (District 3) were had to inform the Council of various aspects of the project. At the advice of Councilpersons Paul Livingston and Yvonne McBride, subsequent contacts via phone or letter were made to Council members Don Weaver (District 6), Jesica Mackey (Chair, District 9), and the Richland County Clerk of Council, Anette A. Kirylo,
>
> Councilwoman Yvonne McBride also recommended soliciting the support of City Council as a joint initiative between Richland County and the City of Columbia.

As a result, City Council immediately approved a work session…after which our hospitality request was unanimously approved in executive session.

Please note that our proposal incorporated a major component of the Broad River Road Corridor plan prepared by the Central Midlands Council of Governments and Richland County Council in 2010. We find ourselves confused by County Council's objection and indifference to consider a proposal which addresses a deteriorating portion of the County slated for specific focus in your own redevelopment plan.

On June 12th and June 15th, formal requests were then made to the Clerk of Council Anette Kirylo, and to Council Chair, Jesica Mackey, to present the project before the full County Council. This request was made in hopes of clarifying or dispelling any misunderstanding, prejudices, or biases concerning the projects' impact and operations. Given the position of Councilwoman Terracio, we believed meeting with the full Council would be vital to a fair and objective evaluation of our project.

Bearing in mind our fast-approaching timeline for finishing the financing of the project, and expecting the same consideration given as other similar projects of this magnitude, we were in hopes of completing the presentation for inclusion and consideration on your July 2, 2024 agenda meeting. Unfortunately, no response to our direct request was received from the clerk or the chairperson.

It has been "nine months" since the presentation to County Vice Chairman Derrek Pugh (Nov. 2023), and a subsequent collective meeting with Council member Allison Terracio. This letter now seeks an explanation of the rationale of Richland County Council as to why a project of this magnitude did not receive fair consideration by the "full County Council" with respect to Council member Terracio's unconstitutional denial.

I offer this letter as an official notice and clarification to all Council members, administrators, and county legal team regarding our community's preclusion from rightful considerations and access to resources as Richland County constituents.

Thank you for your attention to this matter.

59.     The Council ignored Plaintiffs' pleading for equal treatment under the law. There can be no plausible deniability on the part of the other Defendants herein as (1) Plaintiffs knew through conversations with various Councilmembers of their awareness of Councilmember Terracio's decision and reasoning, (2) Plaintiffs were present when most of the other Defendants were previously advised such reasoning was unconstitutional by co-Defendant County Attorney

Wright, and through Plaintiffs' June 28, 2024 letter (*see* Exhibit I), (3) each one of them had been directly told of Councilmember Terracio's illegal position and had been given full opportunity to override her decision and bring this matter before the Council.

60.     On July 12, 2024, Plaintiffs received response on behalf of the County and its Council sent by County Attorney Wright. A copy of the response letter is attached hereto as Exhibit J. The response is an obvious attempt to sidestep Councilmember Terracio's illegal decision to deny Plaintiffs the opportunity to bring their proposal forward to the Council.

61.     County Attorney Wright's response first goes through a laundry list of requirements that would have to be met for hospitality tax funding consideration. These were requirements Plaintiffs stood ready to meet, which the Council and the County would be well aware of if Plaintiffs were allowed to present their proposal, which of course they were not (or if Defendants had reviewed the presentation materials sent by Plaintiffs no later than June 28, 2024 – *see* Exhibit I). But County Attorney Wright had to put some legitimate gloss on what was obviously (including by his own representation in open July 12, 2022 Council session) an unconstitutional basis for decision by Councilmember Terracio. County Attorney Wright then erroneously stated: "As a non-profit, tax-exempt organization, W.O.G. Community Development Corporation would neither qualify nor benefit from [property tax abatement]" which merely demonstrated his ignorance (again, ignorance that would have been remedied by allowing Plaintiffs to put forth their proposal) regarding the fact that the property would be subject to tax (and thus Plaintiffs would not be ineligible for, nor would they not benefit from, "such an arrangement").

62.     Additionally, County Attorney Wright falsely represented in his letter that the Council could not provide approval before the property was owned by the Plaintiff(s). This comment is directly belied by the Council's process for the Richland Fashion Mall project, which

was approved by the Council in October 2022, *before* the property was subsequently purchased in January 2023 using the tax abatement as leverage to obtain financing (which is precisely why such approvals very typically occur *before* the purchase of the property is completed). Finally, in a couple of sentences at the very end of this long response, County Attorney Wright attempted to re-frame Councilmember Terracio's conduct as "ask[ing] a question about the legality of a matter" (presumably likening the situation back to her question in open Council meeting back in July 2022 concerning Plaintiffs' G.A.N.G.S in Peace initiative) rather than what it was *in the present scenario – the making of an unconstitutional decision*:

> I would also be remiss to not comment on the allegation of illegality or unfairness regarding any member of County Council. For a Council member to ask a question about the legality of a matter, is not illegal, but appropriate to get clarity. Also, as elected officials, every Councilperson has a vote and a voice, and has a right to their individual opinion about any matter and the body has the right to address or not address select matters as the body so chooses.

63.    Following this response from County Attorney Wright, and due to growing concern that the Council was making a decision against the County's interest by denying Plaintiff's project fair consideration (and was doing so for unconstitutional reasons), State Representative Kambrell H. Garvin also wrote to the South Carolina Attorney General's office for a formal opinion as to whether the decision to exclude the project from consideration "based solely on [Plaintiffs'] affiliation with a religious institution" was Constitutionally sound. Solicitor General Cook's July 31, 2024 response, which is attached hereto as Exhibit K, set forth the same law cited in his previous preliminary opinion letter to Plaintiffs (*see* Exhibit H) and reached the same conclusion: "Under the authorities presented herein, **the Free Exercise Clause of the United States Constitution precludes such discrimination on the basis of religion**."

64.    Despite all of the foregoing, Defendants doggedly persisted in violating Plaintiffs' civil rights. During closed executive session, without public hearing and opportunity for Plaintiffs

to present their proposal, the Council maintained the decision to refuse to consider the project. While Plaintiffs cannot possibly know what transpired in this closed executive session, nothing discussed could change the key facts here, which are: (1) all Defendants had knowledge of Councilmember Terracio's illegal decision-making, (2) all Defendants had the opportunity to remedy the illegal denial, and yet (3) Plaintiffs received only tacit endorsement of Councilmember Terracio's decision through the Council's and all Defendants' ultimate decision, following executive session, to reject the proposal without ever hearing it and deny Plaintiffs the opportunity to fully present it in the first place.

65.     Following Defendants' actions, Plaintiffs still attempted to pursue the Dutch Square Mall purchase through May 2025, but the project Plaintiffs had spent significant time and expense putting together ultimately died on the vine due to the Council's actions. Plaintiffs' business and business reputation were directly harmed as well since investors were counting on Plaintiffs' ability to move the project forward. Finally, untold revenue over many years to come (that will require expert testimony to fully lay forth) was lost to both Plaintiffs as well as the County of Richland and City of Columbia. Plaintiffs have also been forced to engage legal counsel and expend resources to prosecute this litigation to vindicate their rights. All of the foregoing constitute substantial damages of which the law allows Plaintiffs' recovery.

66.     Plaintiffs have a sincere religious belief to teach the Gospel to WOG Church's members as well as to bring the Gospel message to non-members. As noted above, Plaintiffs' sincere religious beliefs also led Plaintiffs to action in the community to better the community for all in terms of safety, cleanliness, prosperity, and opportunity, including through non-religious community and economic development projects.

67.     The Plaintiffs' community and economic development undertakings, including the

Dutch Square Mall project in question, are not exclusionary in nature in any way – the Dutch Square Mall project would have resulted in an entirely non-religious development (with hotels, restaurants, entertainment, an animated film production studio, an innovation center, theaters, and convention center to name a few things – that would absolutely have enhanced the area's attractiveness in terms of hospitality and tourism). This development would have been open to all comers, religious and non-religious alike. And as stated to Defendants many times, no churches or other places for religious activity were planned or intended for the development.

68.     Plaintiffs sought to pursue this project for the benefit of the entire local community of Richland County. And to accomplish that end, Plaintiffs sought the necessary funding and tax consideration from the Council to make the project a reality.

69.     Under the Council's and the Central Midlands Council of Government's 2010 Broad River Corridor and Community Master Plan, Community Development Guidelines, and now the P3 Program, the County provides hospitality tax and other funding grants and property tax abatements for projects of exactly this kind in order to encourage exactly this type of investment in and redevelopment of important parts of town like the Dutch Square Mall that are in dire need of revitalization.

70.     Because the Dutch Square Mall property, post-acquisition, would not have been tax exempt, Plaintiffs and the project they proposed were fully eligible to submit a proposal for such funding and tax consideration.

71.     Plaintiffs, through their proposal, sought to participate in the 2010 Broad River Corridor and Community Master Plan's and/or the County's Community Development Guidelines incentives for such investment. Indeed, it was a necessity for the project to move forward.

72.     But Defendants had a policy and custom that required such a proposal to be brought

to the Council as a whole by the member representing the district where the project was located and, very dishearteningly, Councilmember Terracio refused to do so based solely on her erroneous and unconstitutional belief that she was entitled to do so because of her belief in "separation of church and state" coupled with the fact that the proposal was being put forward "by [a] church" and its Bishop. *See* ¶ 51, *supra.*

73.     As the facts pled above demonstrate, following Councilmember Terracio's bold statement, Bishop Davis, on behalf of Plaintiffs, made repeated attempts to convince Defendants not to proceed in this illegal manner. Many expressed their private support for and endorsement of the Dutch Square Mall project proposal, recognizing that it would be fantastic for the community and would align with the Council's goals for revitalization of the Broad River Corridor (just as Counclmember Pugh did on the recorded call set forth at ¶ 51, *supra*). Nevertheless, *all* Defendants remained silent when it counted and tacitly endorsed Councilmember Terracio's decision and reasoning as the decision of the Council.

74.     The project had the financial backing of JEDA and the City of Columbia, as the state and the City of Columbia recognized it absolutely qualified for hospitality tax funding. Moreover, outside of the difference in the status of the entities bringing the proposals, the project was functionally indistinguishable from the prior Richland Fashion Mall project that the Richland County Council *did* allow before the Council and did grant property tax abatement.

75.     In other words, Plaintiffs' Dutch Square Mall project both would have fit exactly the Council's goals for the area and was not meaningfully distinguishable (other than the fact that it was much larger in scale) from prior, similar projects that did receive funding and/or tax consideration from the Council.

76.     Yet for no other reason than the fact that Plaintiffs were religiously-affiliated

(indeed, explicitly citing to the belief in "separation of church and state"), Defendants denied Plaintiffs any opportunity whatsoever to present their proposal.

77.     In addition to seeking damages for the harm caused by Defendants' blatant and knowing violation of Plaintiffs' First Amendment rights, Plaintiffs also desire to participate in future funding and/or tax incentive opportunities offered by Richland County, including for other development projects in the conceptual stage at this time.

78.     Due to Defendants' actions and policies described above, including their unconstitutional application of the First Amendment as well as the unconstitutional application of the deference-to-the-local-councilmember custom and policy in this case, Plaintiffs have been harmed and remain ineligible to receive future funding or tax consideration for any projects Plaintiffs may seek to bring to the Council. Indeed, the message from Defendants was clear and broadly applicable to any endeavors Plaintiffs may bring forward in the future since Plaintiffs' *status*, and *not the merit of their endeavors*, is the basis upon which Defendants passed judgment. This message was, again: "Churches need not apply."

## STATEMENT OF LAW

79.     Each and all of the acts of Defendants alleged herein were done and are continuing to be done under the color of state law, including the statutes, regulations, customs, policies and/or usages of the State of South Carolina.

80.     Because this action does not arise out of a legislative enactment by Defendants, but rather out of administrative actions by Defendants, Defendants are not entitled to "legislative immunity" from the claims asserted herein. Any acts that could be deemed "legislative" – such as, potentially, approval and enactment of the 2010 Broad River Corridor & Community Master Plan, the County's Community Development Guidelines or the P3 Program – are not the basis of the

claims against Defendants. The basis of the claims alleged herein is the administrative decision to deny Plaintiffs the opportunity to present their Dutch Square Mall project proposal and seek funding or tax consideration from the Council. *See, e.g., Horne v. Russell Cnty. Comm'n*, 379 F. Supp. 2d 1305, 1337 (M.D. Ala. 2005), *amended on reconsideration*, No. 3:03CV592-A, 2005 WL 8175776 (M.D. Ala. Aug. 29, 2005), *aff'd*, 180 F. App'x 903 (11th Cir. 2006), *and aff'd*, 180 F. App'x 903 (11th Cir. 2006) (quoting *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062-63 (11th Cir.1992) ("Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration.").

81.    Defendants prohibited Plaintiffs from any opportunity to participate in (or even seek participation in) any funding or tax abatement programs offered by Defendants solely because of their connection to a church, pursuant to the Defendants' customs, policies and practices, including their unconstitutional application of the First Amendment's "Establishment Clause" and related (and repeated) unconstitutional denial of Plaintiffs' rights under the First Amendment's "Free Exercise Clause."

82.    Defendants' decision to deny Plaintiffs the opportunity to present their project was a direct result of the policies, practices, customs, and usages adopted by Defendants.

83.    As a direct result of the Defendants' violation of Plaintiffs' Constitutional rights, as alleged herein, Plaintiffs are unable to participate in funding and tax abatement programs offered by Richland County without violating their religious beliefs and practices, resulting in irreparable harm for which there is no adequate remedy at law.

84.    Defendants are treating Plaintiffs differently than other similarly situated Richland County citizens and/or entities because they are affiliated with a church.

85.    Plaintiffs' religious exercise is fully protected by the United States Constitution.

86.     Plaintiffs' rights to be treated similarly to non-religious County citizens or entities is fully protected by the United States Constitution.

87.     Prohibiting Plaintiffs from participating in the benefits offered to others under the Broad River Corridor and Community Master Plan, or other development incentive programs offered by the Council, because Plaintiffs are affiliated with a church is a violation of the First Amendment and Fourteenth Amendment to the United States Constitution.

88.     Unless and until Defendants' exclusion of Plaintiffs from such programs is enjoined, Plaintiffs will suffer and continue to suffer irreparable harm to their Constitutional rights.

89.     Providing funding or tax abatement incentives to Plaintiffs for the purpose of purchasing, redeveloping and revitalizing important property in the Broad River Corridor like the Dutch Square Mall does not impermissibly aid any church, sect or denomination of religion in violation of the First Amendment's "Establishment Clause" and is consistent with Article I, Section 2 of the South Carolina Constitution.

90.     Rather, prohibiting Plaintiffs from participating in such programs violates Federal and State Constitutional authority concerning the "Free Exercise" of religion because such action discriminates against Plaintiffs solely because they are affiliated with a church.

## CAUSES OF ACTION

## COUNT I – SECTION 1983 CLAIM FOR DAMAGES

91.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

92.     At all times relevant to this Complaint, Defendants were acting under color of state law in their capacities as Councilmembers, County Administrator, County Clerk and/or County Attorney for Richland County.

93.    The facts concerning Defendants' violation of Plaintiffs' Constitutional rights are fully set forth above.

94.    Defendants' actions were intentional, reckless and/or deliberately indifferent to Plaintiffs' Constitutional rights.

95.    Defendants' actions deprived Plaintiffs of and violated Plaintiffs' rights secured by the Constitution or laws of the United States (specifically, those secured by the First and Fourteenth Amendments of the U.S. Constitution), as well as by the Constitution and laws of the State of South Carolina.

96.    Defendants' actions were the proximate cause of Plaintiffs' injuries and damages.

97.    As a direct and proximate result of Defendants' unconstitutional actions, Plaintiffs have suffered damages including but not limited to: (a) expenses incurred as part of the transaction to purchase and/or in preparation for the project, which were over $1 million not including legal fees, (b) the loss of the property, which would have an estimated value over $100 million following completion of the project (compared to the assessed value at the time of the planned purchase of only about $46 million), (c) estimated $150 million in projected lost rental income over the 30-year commercial loan term (the term applied by JEDA to the bonds it stood ready to issue), (d) lost business income for the innovation center, film, live arts, convention center and animation studio estimated conservatively at no less than an average $10 million annually over the 30-year term (not including lost revenue from films produced), (d) damages to Plaintiffs' business reputation and goodwill, and (e) legal fees and expenses incurred both in bringing this case as well as in the process of the attempted purchase of the Dutch Square Mall and organizing bond financing.

## COUNT II – SECTION 1985(3) CONSPIRACY CLAIM

98.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

99.     Under 42 U.S.C. § 1985(3), a claim lies "[i]f two or more persons in any State or Territory conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws[.]"

100.     Section 1985(3) further states "in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

101.     As fully described hereinabove, upon becoming aware of Councilmember Terracio's unconstitutional decision to violate Plaintiffs' Constitutional rights by denying Plaintiffs the opportunity to present their Dutch Square Mall project proposal to the Council, upon information and belief, a non-public, executive session of the Council was held that resulted in the Council maintaining Councilmember Terracio's decision. Furthermore, (1) County Clerk Kirylo and County Administrator Brown were similarly made aware of Councilmember Terracio's illegal decision and agreed to support same either during or before said executive session, and (2) County Attorney Wright, through his July 12, 2024 letter (Exhibit J) and/or through his legal advice given to the Council during or before said executive session evidenced his agreement to the decision to violate Plaintiffs' Constitutional rights.

102.     The tacit and/or explicit agreement of all of the named Defendants herein

constitutes a knowing and intentional conspiracy on the part of Defendants to deprive Plaintiffs of the equal protection of the laws, and/or of equal privileges and immunities under the laws, and/or to prevent or hinder the constituted authorities of Richland County or the State of South Carolina from giving or securing to Plaintiffs the equal protection of the laws.

103.    Defendants took actions in furtherance of the object of the conspiracy, whereby Plaintiffs were injured and damaged as described above and whereby Plaintiffs were deprived of their Constitutional rights, by agreeing to deny Plaintiffs the opportunity to present their Dutch Square Mall proposal to the Council and subsequently so denying Plaintiffs the opportunity to present their Dutch Square Mall proposal to the Council.

104.    Defendants' actions and conspiracy were the proximate cause of Plaintiffs' harm and damages.

105.    As a direct and proximate result of Defendants' unconstitutional actions, Plaintiffs have suffered damages including but not limited to: (a) expenses incurred as part of the transaction to purchase and/or in preparation for the project, which were over $1 million not including legal fees, (b) the loss of the property, which would have an estimated value over $100 million following completion of the project (compared to the assessed value at the time of the planned purchase of only about $46 million), (c) estimated $150 million in projected lost rental income over the 30-year commercial loan term (the term applied by JEDA to the bonds it stood ready to issue), (d) lost business income for the innovation center, film, live arts, convention center and animation studio estimated conservatively at no less than an average $10 million annually over the 30-year term (not including lost revenue from films produced), (d) damages to Plaintiffs' business reputation and goodwill, and (e) legal fees and expenses incurred both in bringing this case as well as in the process of the attempted purchase of the Dutch Square Mall and organizing bond financing.

## COUNT III – VIOLATION OF THE RIGHT TO EQUAL PROTECTION
## UNDER THE UNITED STATES CONSTITUTION

106.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

107.    Defendants have allowed other similarly-situated citizens and/or entities proposing other similar projects to Plaintiffs' Dutch Square Mall proposal to participate in funding and tax abatement programs offered by the County, including under the 2010 Broad River Corridor and Community Master Plan and/or the County's Community Development Guidelines.

108.    The Equal Protection Clause of the United States Constitution requires that the government treat equally all persons similarly situated.

109.    Defendants denied Plaintiffs the opportunity to participate in such programs solely because Plaintiffs are affiliated with a church.

110.    Religion is a suspect class.

111.    In order for Defendants to treat Plaintiffs dissimilarly with other like organizations, Defendants must have a compelling reason and such treatment must be the least restrictive means of achieving that interest.

112.    Defendants do not have a compelling government interest to justify such disparate treatment of Plaintiffs.

113.    Excluding Plaintiffs from the opportunity to participate in such programs is not narrowly tailored to achieve a compelling governmental interest.

114.    Excluding Plaintiffs from the opportunity to participate in such programs because Plaintiffs are affiliated with a church is not rationally related to a legitimate governmental interest.

115.    Defendants' actions in unconstitutionally denying Plaintiffs the opportunity to participate in such programs by rejecting Plaintiffs' attempt to propose their project to the Council targets religion for disparate treatment as compared to secular applicants.

116.    Defendants' actions and policies violate the Equal Protection Clause of the Fourteenth Amendment.

117.    As a direct and proximate result of Defendants' unconstitutional actions, Plaintiffs have suffered damages including but not limited to: (a) expenses incurred as part of the transaction to purchase and/or in preparation for the project, which were over $1 million not including legal fees, (b) the loss of the property, which would have an estimated value over $100 million following completion of the project (compared to the assessed value at the time of the planned purchase of only about $46 million), (c) estimated $150 million in projected lost rental income over the 30-year commercial loan term (the term applied by JEDA to the bonds it stood ready to issue), (d) lost business income for the innovation center, film, live arts, convention center and animation studio estimated conservatively at no less than an average $10 million annually over the 30-year term (not including lost revenue from films produced), (d) damages to Plaintiffs' business reputation and goodwill, and (e) legal fees and expenses incurred both in bringing this case as well as in the process of the attempted purchase of the Dutch Square Mall and organizing bond financing.

## COUNT IV – VIOLATION OF THE RIGHT TO FREE EXERCISE OF RELIGION UNDER THE UNITED STATES CONSTITUTION

118.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

119.    Plaintiffs have a sincere religious belief to teach a Christian worldview to others (church members and non-members alike) through WOG Church.

120.    Defendants' policies and actions require Plaintiffs to abandon their religious beliefs and practices in order to participate in funding and tax abatement programs like those contemplated by the 2010 Broad River Corridor and Community Master Plan and/or the County's Commercial Development Guidelines.

121.    Requiring Plaintiffs to choose between participating in government programs or

benefits or, on the other hand, maintaining their religious beliefs and practices is a violation of the Free Exercise Clause of the United States Constitution.

122.    Requiring Plaintiffs to choose between participating in government programs or benefits or, on the other hand, maintaining their religious beliefs and practices places a substantial burden on Plaintiffs' religious exercise.

123.    Defendants' actions in unconstitutionally barring Plaintiffs from the opportunity to participate in such programs or benefits by denying Plaintiffs the opportunity to present their Dutch Square Mall proposal to the County Council *solely because Plaintiffs are affiliated with a church* targets religious exercise.

124.    Defendants' policies and actions as described herein are not neutral, nor generally applicable.

125.    Defendants' policies and actions as described herein target religion for disparate treatment.

126.    Defendants' policies and actions do not serve a compelling governmental interest and are not narrowly tailored to achieve a valid governmental interest.

127.    Defendants' actions and policies violate the Free Exercise Clause of the First Amendment.

128.    As a direct and proximate result of Defendants' unconstitutional actions, Plaintiffs have suffered damages including but not limited to: (a) expenses incurred as part of the transaction to purchase and/or in preparation for the project, which were over $1 million not including legal fees, (b) the loss of the property, which would have an estimated value over $100 million following completion of the project (compared to the assessed value at the time of the planned purchase of only about $46 million), (c) estimated $150 million in projected lost rental income over the 30-

year commercial loan term (the term applied by JEDA to the bonds it stood ready to issue), (d) lost business income for the innovation center, film, live arts, convention center and animation studio estimated conservatively at no less than an average $10 million annually over the 30-year term (not including lost revenue from films produced), (d) damages to Plaintiffs' business reputation and goodwill, and (e) legal fees and expenses incurred both in bringing this case as well as in the process of the attempted purchase of the Dutch Square Mall and organizing bond financing.

## COUNT V – VIOLATION OF THE ESTABLISHMENT CLAUSE UNDER THE UNITED STATES CONSTITUTION

129.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

130.    Defendants' policies and actions that prohibit organizations from participating in programs or benefits like those available under the 2010 Broad River Corridor and Community Master Plan and/or the County's Commercial Development Guidelines if they are owned or controlled by a church are hostile to religion.

131.    Defendants' actions in enforcing said policies, including the unconstitutional enforcement (as applied here) of the Council's custom and practice of deference to the councilmember from the district from which a project originates, were hostile to religion.

132.    Defendants' actions in enforcing said policies, including the unconstitutional enforcement (as applied here) of the Council's custom and practice of deference to the councilmember from the district from which a project originates, to deny Plaintiffs the opportunity to present their Dutch Square Mall proposal to the Council did not serve a valid secular purpose.

133.    Defendants' actions in enforcing said policies, including the unconstitutional enforcement (as applied here) of the Council's custom and practice of deference to the councilmember from the district from which a project originates, to deny Plaintiffs the opportunity to present their proposal to the Council had the primary effect of hostility to religion.

134.    Defendants' actions in enforcing said policies, including the unconstitutional enforcement (as applied here) of the Council's custom and practice of deference to the councilmember from the district from which a project originates, to deny Plaintiffs the opportunity to present their proposal to the Council excessively entangles Defendants with religion as Defendants have to determine what is religious enough to justify denial of such opportunities.

135.    Defendants' actions in enforcing said policies, including the unconstitutional enforcement (as applied here) of the Council's custom and practice of deference to the councilmember from the district from which a project originates, to deny Plaintiffs the opportunity to present their proposal to the Council target religion for disparate treatment.

136.    Defendants' policies and actions, and the Defendants' enforcement of those policies and actions under the circumstances described herein, violate the Establishment Clause of the United States Constitution.

137.    As a direct and proximate result of Defendants' unconstitutional actions, Plaintiffs have suffered damages including but not limited to: (a) expenses incurred as part of the transaction to purchase and/or in preparation for the project, which were over $1 million not including legal fees, (b) the loss of the property, which would have an estimated value over $100 million following completion of the project (compared to the assessed value at the time of the planned purchase of only about $46 million), (c) estimated $150 million in projected lost rental income over the 30-year commercial loan term (the term applied by JEDA to the bonds it stood ready to issue), (d) lost business income for the innovation center, film, live arts, convention center and animation studio estimated conservatively at no less than an average $10 million annually over the 30-year term (not including lost revenue from films produced), (d) damages to Plaintiffs' business reputation and goodwill, and (e) legal fees and expenses incurred both in bringing this case as well as in the

process of the attempted purchase of the Dutch Square Mall and organizing bond financing.

## COUNT VI – VIOLATION OF THE FREE SPEECH CLAUSE
## UNDER THE UNITED STATES CONSTITUTION

138.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

139.    Plaintiffs engage in speech and expressive activity by teaching a Christian worldview to others (church members and non-members alike) through WOG Church.

140.    Plaintiffs' speech is fully protected by the First Amendment to the United States Constitution.

141.    Defendants' policies and actions in denying Plaintiffs the opportunity to participate in such programs or benefits as those offered other similarly-situated non-religious individuals or entities under the 2010 Broad River Corridor and Community Master Plan and/or the County's Commercial Development Guidelines solely because Plaintiffs are affiliated with a church restricts Plaintiffs' speech based on its religious viewpoint and content.

142.    Defendants' policies and actions in denying Plaintiffs the opportunity to participate in such programs or benefits as those offered other similarly-situated non-religious individuals or entities under the 2010 Broad River Corridor and Community Master Plan and/or the County's Commercial Development Guidelines solely because Plaintiffs are affiliated with a church singles out religious expression for discriminatory and unfavorable treatment.

143.    Defendants' policies and actions in denying Plaintiffs the opportunity to participate in such programs or benefits as those offered other similarly-situated non-religious individuals or entities under the 2010 Broad River Corridor and Community Master Plan and/or the County's Commercial Development Guidelines solely because Plaintiffs are affiliated with a church restrains constitutionally-protected speech in advance of its expression.

144.    Defendants' policies and actions in denying Plaintiffs the opportunity to participate

in such programs or benefits as those offered other similarly-situated non-religious individuals or entities under the 2010 Broad River Corridor and Community Master Plan and/or the County's Commercial Development Guidelines solely because Plaintiffs are affiliated with a church chill the Plaintiffs' speech.

145.     Defendants' policies and actions in denying Plaintiffs the opportunity to participate in such programs or benefits as those offered other similarly-situated non-religious individuals or entities under the 2010 Broad River Corridor and Community Master Plan and/or the County's Commercial Development Guidelines solely because Plaintiffs are affiliated with a church burdens religious expression like that of Plaintiffs'.

146.     Defendants have no compelling reason that would justify their restrictions on speech.

147.     Defendants have no rational basis that would justify their restrictions on speech.

148.     Defendants' policies and actions are not narrowly tailored to achieve any permissible governmental interest.

149.     Defendants' actions and policies violate the Free Speech Clause of the First Amendment.

150.     As a direct and proximate result of Defendants' unconstitutional actions, Plaintiffs have suffered damages including but not limited to: (a) expenses incurred as part of the transaction to purchase and/or in preparation for the project, which were over $1 million not including legal fees, (b) the loss of the property, which would have an estimated value over $100 million following completion of the project (compared to the assessed value at the time of the planned purchase of only about $46 million), (c) estimated $150 million in projected lost rental income over the 30-year commercial loan term (the term applied by JEDA to the bonds it stood ready to issue), (d) lost

business income for the innovation center, film, live arts, convention center and animation studio estimated conservatively at no less than an average $10 million annually over the 30-year term (not including lost revenue from films produced), (d) damages to Plaintiffs' business reputation and goodwill, and (e) legal fees and expenses incurred both in bringing this case as well as in the process of the attempted purchase of the Dutch Square Mall and organizing bond financing.

## JURY DEMAND

151.    Plaintiffs demand a trial by jury on all issues so triable.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants and request this Court:

a.  Award compensatory damages, including consequential damages, against Defendants sufficient to compensate Plaintiffs for the harm suffered as a result of Defendants' unconstitutional actions;

b.  Award punitive damages against Defendants sufficient to punish Defendants for their willful, malicious, and/or reckless conduct and to deter similar conduct in the future;

c.  Award nominal damages to recognize the violation of Plaintiffs' Constitutional rights;

d.  Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

e.  Enter a declaratory judgment that Defendants' actions violated Plaintiffs' Constitutional rights, specifically that Defendants' actions in denying Plaintiffs' (or any other religiously affiliated individuals or entities) the opportunity to present a proposal to the Council solely because Plaintiffs are affiliated with a church violated the Equal Protection, Free Exercise, Free Speech, and Establishment Clauses of the First and Fourteenth Amendments to the

United States Constitution, as well as the South Carolina Constitution Article I, § 2;

f.  Enter a preliminary and permanent injunction enjoining Defendants, their agents, servants, employees, officials or any other person acting in concert with them or on their behalf, from discriminating against Plaintiffs (or any other religiously affiliated individuals or entities) with respect to future programs or benefits offered by the County;

g.  Declare that Defendants' actions and policy of deference to the local district councilmember were unconstitutional as applied to deny Plaintiffs the opportunity to present their Dutch Square Mall proposal to the Council;

h.  Grant such other relief as the Court deems just and proper;

i.  Adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy, in order that such declarations shall have the force and effect of final judgment; and

j.  Retain jurisdiction of this matter for the purpose of enforcing the Court's orders.


Submitted:     September 30, 2025

s/ James M. Griffin
James M. Griffin (Fed. ID No. 1053)
Margaret N. Fox (Fed. ID No. 10576)
GRIFFIN HUMPHRIES LLC
Post Office Box 999
Columbia, South Carolina 29202
T: (803) 744-0800
jgriffin@griffinhumphries.com
mfox@griffinhumphries.com

s/ Gerald Malloy
Gerald Malloy (Fed. ID No. 5360)
Malloy Law Firm
108 Cargill Way
Hartsville, SC 29550
T: (843) 339-3000
gmalloy@bellsouth.net

s/ Francois M. Blaudeau
François M. Blaudeau (ASB-7722-D32F)
*Application for pro hac vice to be submitted*
Marc J. Mandich (ASB-9346-H48E)
*Application for pro hac vice to be submitted*
SOUTHERN MED LAW
2762 B M Montgomery St, Suite 101
Homewood, AL 35209
T: (205) 564-2741
F: (205) 649-6386
francois@southernmedlaw.com
marc@southernmedlaw.com

*Counsel for the Plaintiffs*